UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NISSAN MOTOR ACCEPTANCE
CORPORATION,

      Plaintiff,

   -against-

NEMET MOTORS, LLC d/b/a Nemet Auto
Group of Jamaica, Nemet Auto Group, Nemet
Motors, and Nemet Nissan; SCOTT PERLSTEIN;
CAROL JOY FAMILY PROPERTIES, LLC; and C.
JOY FAMILY PROPERTIES, LLC;

      Defendants.

**MEMORANDUM & ORDER**

19-CV-3284 (NGG) (CLP)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Nissan Motor Acceptance Corporation ("NMAC") brings this action against Nemet Motors, LLC ("Nemet"); Scott Perlstein; Carol Joy Family Properties, LLC; and C. Joy Family Properties, LLC. (Am. Compl. (Dkt. 18).) Nemet, an automobile dealer, allegedly sold 192 Nissan vehicles to purchasers without repaying the purchase price to NMAC within 24 hours, as required by their agreements. (*Id.* ¶¶ 1-4.) As per those agreements, NMAC retains title to those vehicles until it receives payment. (*Id.*) NMAC brings, *inter alia*, breach of contract and conversion claims against Nemet. (*See id.* ¶¶ 112, 115.) Nemet now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the second count of NMAC's Amended Complaint—conversion—as duplicative of its breach of contract claim. (Nemet Mot. to Dismiss (Dkt. 25).)

For the reasons stated below, Nemet's motion is GRANTED.

1

## I. BACKGROUND

### A. Facts

The court takes the following statement of facts from Plaintiff's amended complaint, the well-pleaded allegations of which the court accepts as true for purposes of the motion to dismiss. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

Nemet entered into a series of agreements with NMAC concerning the financing and sale of Nissan vehicles. (Am. Compl. ¶ 1.) As per those agreements, vehicles owned by NMAC are held in trust by Nemet. (*Id.*) After Nemet sells the vehicles, it is "required to repay NMAC the full vehicle purchase price within 24 hours or [it] will have violated the financing and security agreement." (*Id.*) Nemet is authorized to transfer title from NMAC to the purchaser only after the vehicle is sold and NMAC is paid. (*Id.* ¶¶ 3-4.) NMAC alleges that Nemet sold 192 Nissan vehicles—valued at approximately $2.7 million—without repaying NMAC, therefore breaching the financing agreements. (*Id.* ¶ 5.) NMAC brings, *inter alia*, breach of contract and conversion claims against Nemet for its failure "to remit payment for the sales of the 192 vehicles to NMAC" and "to secure the proceeds of the sales of the vehicles in trust." (*Id.* ¶ 2.)

### B. Procedural History

NMAC filed its original complaint on June 3, 2019, and an amended complaint on September 13, 2019. (*See* Compl. (Dkt. 1); Am. Compl.) Currently pending before the court is Defendant Nemet's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Nemet Mot. to Dismiss ("Mot.") (Dkt. 25); Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 25-3); Mem. in Opp. to Mot. to Dismiss ("Opp.") (Dkt. 26); Reply (Dkt. 27).)

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (citing *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995)).

## III. DISCUSSION

Nemet seeks to dismiss Plaintiff's conversion claim on the grounds that it is duplicative of its breach of contract claim. "Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'" *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993) (quoting *Meese v. Miller*, 79 A.D.2d 237, 241 (4th Dep't 1981)). To state a claim for conversion under New York law, a plaintiff "must show (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted).

An otherwise properly pleaded conversion claim is susceptible to dismissal if it is duplicative of a breach of contract claim. *See Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*, No. 07-cv-10490 (NRB), 2009 WL 855648, at *10 (S.D.N.Y. Mar. 25, 2009). Courts in this circuit routinely dismiss duplicative conversion claims under Rule 12(b)(6). *See, e.g., Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) (collecting cases). "To sustain a conversion claim, a plaintiff must allege acts that constitute unlawful or wrongful behavior separate from a violation of contractual rights." *Solomatina v. Mikelic*, 370 F. Supp. 3d 420, 431 (S.D.N.Y. 2019) ((citation, internal quotation marks, and alteration omitted)). To determine whether claims are duplicative, courts look to the material facts on which they are based, as well as the injuries for which damages are sought. *See LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 164 (E.D.N.Y. 2012).

Here, the two claims are duplicative because the facts that provide the basis for Plaintiff's breach of contract claim also underlie its conversion claim, and Plaintiff seeks the same relief for both claims. In its breach of contract claim, NMAC alleges that it "performed all of its obligations" under the various agreements, but that Nemet "failed to make payments owed to NMAC, failed to pay over the proceeds of sales to NMAC, failed to pay over the proceeds of the rental of vehicles financed by NMAC, [and] failed to comply with NMAC's demands to cure payment defaults, all in breach of the agreements between the parties." (Am. Compl. ¶¶ 110-11.) In its conversion claim, NMAC alleges that: (1) "Nemet Motors' exercise of dominion and control over the sale proceeds of the 192 Vehicles ... that securitizes the [Automotive Wholesale Financing and Security Agreement] and other agreements constitutes ... conversion of NMAC's property;" (2) "Nemet Motors has intentionally and wrongfully interfered with NMAC's possession and ownership of the sale proceeds of the 192 Vehicles in violation of the superior rights of NMAC;" and (3)

"[b]y virtue of the terms and conditions of the WFSA and UCC Financing Statements, NMAC retains a perfected security interest in the sale proceeds of the 192 [sold out-of-trust] Vehicles … and thereby maintains superior possessory rights." (*Id.* ¶¶ 115-118.) In other words, the conversion claim arises out of Nemet's alleged violations of the agreements between it and NMAC, absent which a conversion claim would not lie. Plaintiff appears to agree, as it alleges that Nemet's failure to repay it is a "severe breach of the WFSA by Nemet Motors with NMAC *akin to conversion* of NMAC's vehicles." (*Id.* ¶ 103 (emphasis added).)[1]

The damages NMAC seeks in its conversion claim are, for all intents and purposes, the same as the damages sought in its the breach of contract claim. (*See id.* ¶¶ 111-112, 119-120). Although NMAC seeks punitive damages on its conversion claim, punitive damages are unavailable absent allegations of conduct actionable as an independent tort. See *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995) ("Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract."). NMAC has not identified any independently tortious conduct. Moreover, even if it had done so, it has not alleged the elements necessary to sustain a punitive damages claim, to wit, that the conduct at issue was egregious, that it was directed at NMAC, and that it was part of a pattern directed at

---

[1] Plaintiff's reliance on *Fabry's S.R.I. v. IFT Int'l, Inc.* and *Moses v. Martin* is unavailing, as both cases involved conversion claims based on other alleged wrongful conduct. In *Fabry's*, the defendants collected and retained payments for merchandise without authorization *after* the termination of the parties' agreements. No. 02-cv-9855 (SAS), 2003 WL 21203405, at *4 (S.D.N.Y. May 19, 2003). In *Moses*, the defendants were allegedly involved in a fraudulent scheme in which they "deceitfully claim[ed] that the [plaintiff] owed [them] money for ostensibly un-reimbursed advances." 360 F. Supp. 2d at 539 (internal quotation marks omitted).

the general public. *See, e.g., AD Rendon Comms., Inc. v. Lumina Americas Inc.*, No. 04-cv-8832 (KMK), 2007 WL 2962591, at *8 (S.D.N.Y. Oct. 10, 2007).

As such, Plaintiff's conversion claim is duplicative of its breach claim and must be dismissed.

### IV. CONCLUSION

For the reasons stated above, Defendant Nemet Motors, LLC's (Dkt. 25) Motion to Dismiss Plaintiff's conversion claim is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
July 21, 2020

      /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge