Case 1:19-cv-03284-NGG-CLP Document 60 Filed 09/29/22 Page 1 of 17 PageID #: 3066

FILED
IN CLERK'S OFFICE
U.S. District Court E.D.N.Y.
09/29/2022
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NISSAN MOTOR ACCEPTANCE
CORPORATION,

          Plaintiff,

-against-

NEMET MOTORS, LLC d/b/a Nemet Auto
Group of Jamaica, Nemet Auto Group, Nemet
Motors, and Nemet Nissan, SCOTT PERLSTEIN,
CAROL JOY FAMILY PROPERTIES, LLC, and C.
JOY FAMILY PROPERTIES, LLC,

          Defendants.

**MEMORANDUM & ORDER**
**19-CV-3284 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Plaintiff Nissan Motor Acceptance Corporation's ("Nissan") motion for partial summary judgment on the count of foreclosure, the fourth count of its Amended Complaint. (*See* Dkt. 46.) For the following reasons, the court GRANTS Nissan's motion for partial summary judgment.

## I. BACKGROUND

Nissan is a financing company which maintains lines of credit for authorized car dealers. (Pl.'s 56.1 St. (Dkt. 46-1) ¶ 1; Defs.' 56.1 St. (Dkt. 46-8) ¶ 1.) The defendants are three corporate entities and one individual associated with one such dealership located in Queens: Nemet Motors, LLC ("Nemet"), the corporate entity of the dealership itself (Pl.'s 56.1 St. ¶ 2; Defs.' 56.1 St. ¶ 2); Carol Joy Family Properties, LLC ("Carol Joy") and C. Joy Family Properties, LLC ("C. Joy", and together with Carol Joy, the "Carol Joy Parties"), commercial entities which own the real property leased by Nemet for its dealership operations (Pl.'s 56.1 St. ¶ 15; Defs.' 56.1 St. ¶ 15); and Scott Perlstein, the president of Nemet. (Pl.'s 56.1 St. ¶ 4; Defs.' 56.1 St. ¶ 4.)

1

This case arises out of a series of loan and security agreements between Nissan and one or more of the defendants. In its September 13, 2019 Amended Complaint (the operative complaint and referred to herein as the "Complaint"), Nissan brought several claims arising out of alleged defaults under the various agreements between the parties. One such agreement, the Automotive Wholesale Financing and Security Agreement (the "WFSA"), provides terms for a line of credit extended to Nemet to finance its wholesale purchase of the cars making up its sales inventory. (*See* Compl. ¶¶ 35, 40.) Under the terms of the WFSA, Nissan would make vehicles available to Nemet on credit and retain title to those vehicles as collateral until Nemet repaid Nissan, which must occur promptly after sale of the car. (*Id.* ¶¶ 40-41.) In the Complaint, Nissan alleged that, in early 2019, it conducted audits of Nemet (as authorized under the WFSA (*id.* ¶ 44)) and discovered that Nemet had sold 192 cars without repaying Nissan as required. (*Id.* ¶¶ 5-6.)

The instant motion, on which Nissan seeks summary judgment only with respect to the count of foreclosure, relates to a series of different (but related) agreements between Nissan and one or more of the defendants. Those agreements are as follows: (1) a promissory note in the amount of $11.5 million, dated March 28, 2018, executed and delivered by Carol Joy, and secured by a mortgage on those of the Subject Properties owned by Carol Joy (Pl.'s 56.1 St. ¶¶ 8, 12; Defs.' 56.1 St. ¶¶ 8, 12); (2) a promissory note in the amount of $3.5 million, dated March 28, 2018, executed and delivered by C. Joy, and secured by a mortgage on those of the Subject Properties owned by C. Joy (Pl.'s 56.1 St. ¶¶ 17, 21; Defs.' 56.1 St. ¶¶ 17, 21) (the promissory notes and mortgages together, the "Notes"); (3) guaranties in favor of Nissan executed by Nemet and Perlstein, guaranteeing repayment of the Notes (Pl.'s 56.1 St. ¶¶ 26-28; Defs.' 56.1 St. ¶¶ 26-28) (the "Guaranties"); and (4) a Cross-Guaranty, Cross-Collateral and Cross-Default Agreement (the "Cross-Agreement"), under which

2

all four Defendants jointly and severally agreed to guaranty and collateralize all present and future debt obligations to Nissan under any agreement, including the Notes and the WFSA (Pl.'s 56.1 St. ¶¶ 30, 33-35; Defs.' 56.1 St. ¶¶ 30, 33-35; Ex. 9 to Niezgoda Dec. (Dkt. 46-4) at ECF p. 136-37). The Cross-Agreement also provided that any default under any of the agreements (including the Notes, the Guaranties, and the WFSA), constituted a default under all agreements (again including the Notes, the Guaranties, and the WFSA). (*Id.* at 137.) In this manner, the Cross-Agreement, in effect, created a single lender/borrower relationship between Nissan, on the one hand, and the Defendants collectively, on the other, for the purpose of the issues raised in this motion.

In January 2018, the Carol Joy Parties purchased the properties at issue in this case[1] from K&N Properties; the properties were then leased to Nemet. (Pl.'s 56.1 St. ¶¶ 7, 15-16; Defs.' 56.1 St. ¶¶ 7, 15-16.) The Notes were executed two months later, on March 28, 2018. (Pl.'s 56.1 St. ¶¶ 8, 17; Defs.' 56.1 St. ¶¶ 8, 17.)

---

[1] The relevant properties are: (1) located at 87-81 153rd Street, Jamaica, New York, and designated as Block 9763 Lot 3; (2) located at 87-77 153rd Street, Jamaica, New York, and designated as Block 9763 Lot 5; (3) located at 87-73 153rd Street, Jamaica, New York, and designated as Block 9763 Lot 7; (4) located at 87-71 153rd Street, Jamaica, New York and designated as Block 9763 Lot 9; (5) located at 87-65 153rd Street a/k/a 87-61-65 153rd Street, Jamaica, New York, and designated as Block 9763 Lot 11; (6) located at 153-02 Hillside Avenue, Jamaica, New York, and designated as Block 9763 Lot 13; (7) located at 153-10 Hillside Avenue, Jamaica, New York, and designated as Block 9763 Lot 16; (8) located at 153-22 Hillside Avenue a/k/a 153-12-22 Hillside Avenue, Jamaica, New York, and designated as Block 9763 Lot 17 (Pl.'s 56.1 St. ¶ 7; Defs.' 56.1 St. ¶ 7); (9) located at 153-01/09 Hillside Avenue, Jamaica, New York, and designated as Block 9706 Lot 69; (10) located at 150-57 Hillside Avenue, Jamaica, New York, and designated as Block 9706 Lot 72; and (11) located at 150-51 Hillside Avenue, Jamaica, New York, and designated as Block 9706 Lot 75 (collectively, the "Subject Properties"). (Pl.'s 56.1 St. ¶ 16; Defs.' 56.1 St. ¶ 16.)

As security for repayment, the Carol Joy Parties executed mortgages on the Subject Properties and delivered them to Nissan, which has held the mortgages since. (Pl.'s 56.1 St. ¶¶ 12, 21; Defs.' 56.1 St. ¶¶ 12, 21.)

Beginning in August 2019, the Defendants stopped making payments toward principal or interest on the Notes. (Pl.'s 56.1 St. ¶¶ 36-39; Defs.' 56.1 St. ¶¶ 36-39.) These non-payments constituted events of default under the terms of the Notes and the Cross-Agreement. (Exs. 1, 3, 9 to Niezgoda Dec. at ECF p. 4, 54, 137.)

Nissan originally brought this action on June 3, 2019 (Dkt. 1). The operative Complaint alleges breach of contract and conversion, and seeks an accounting, judicial foreclosure, and appointment of a receiver. (*See generally* Complaint (Dkt. 18).) On December 31, 2019, Nemet moved to dismiss the count of conversion as duplicative of the breach of contract claim, (Dkt. 12 (Affidavit of Service for Motion to Dismiss)), and the other Defendants answered the Amended Complaint. (*See* Dkt. 22.) On July 22, 2020, the court granted the motion to dismiss, (Dkt. 29), and the Defendants filed the operative answer to the remaining counts on August 5, 2020. (Dkt. 32 (the "Answer").)

On June 8, 2021, Nissan requested a pre-motion conference to discuss the filing of a partial motion for summary judgment on its claim for judicial foreclosure. (Dkt. 39.) The Defendants opposed this request, asserting (1) that discovery continued with respect to a dispute over the commercial reasonableness of Nissan's disposal of collateral, (2) that any concerns regarding control of the property could be addressed by appointment of a receiver, and (3) the Defendants planned to send a Declaration of COVID-19-Related Hardship pursuant to New York's COVID-19 Emergency Protect Our Small Businesses Act of 2021, 2021 N.Y. Sess. Laws Ch. 73 (McKinney), *as amended* (the "Act"), after which the action must be stayed until the expiry of the Act's relief provisions. (Dkt. 40 at 1-2.) Defendants served the Declaration

4

of COVID-19-Related Hardship on Nissan on July 7, 2021. (Dkt. 41 at 1.) On September 30, 2021, the court held a pre-motion conference and granted Nissan leave to file the instant motion for partial summary judgment, which Nissan filed on December 17, 2021. (Dkt. 46) On April 21, 2022, Nissan also moved for the appointment of receiver (Dkt. 48), which the court granted on May 5, 2022. (Dkt. 52.)

## II. LEGAL STANDARD

Summary judgment is warranted where, construing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *1077 Madison Street, LLC v. Daniels*, 954 F.3d 460, 463 (2d Cir. 2020); *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). "A genuine dispute as to a material fact exists and summary judgment is therefore improper where the evidence is such that a reasonable jury could decide in the non-movant's favor." *53rd Street, LLC v. U.S. Bank N.A.*, 8 F.4th 74, 77 (2d Cir. 2021).

## III. DISCUSSION

### A. Nissan's *Prima Facie* Case for Foreclosure

To establish entitlement to foreclosure under New York law, a plaintiff must produce the note and mortgage and provide uncontested proof of default. *See Bank of Smithtown v. 264 W. 124 LLC*, 963 N.Y.S.2d 176, 177 (1st Dep't 2013); *Rossrock Fund II, L.P. v. Osborne*, 918 N.Y.S.2d 514, 515 (2d Dep't 2011); *Red Tulip, LLC v. Neiva*, 842 N.Y.S.2d 1, 5 (1st Dep't 2007). Where, as here, the plaintiff is also the original lender, production of the mortgage and note establish standing. *Peak Fin. Partners, Inc. v. Brook*, 119 A.D.3d 539, 539 (N.Y. 2d Dep't 2014).

The Notes and associated mortgages were attached to the Amended Complaint. (Ex. F to Amended Complaint (Dkt. 18-1)

5

at ECF p. 50-74; Ex. G to Amended Complaint (Dkt. 18-1) at ECF p. 76-109; Ex. I to Amended Complaint (Dkt. 18-1) at ECF p. 123-36; Ex. J to Amended Complaint (Dkt. 18-1) at ECF p. 138-66.) There is no dispute regarding the validity of these documents. (Defs.' 56.1 St. ¶ 8 (admitting Carol Joy entered into the Note attached as Exhibit F to the Amended Complaint); *id.* ¶ 12 (admitting Carol Joy entered into the mortgage attached as Exhibit G to the Amended Complaint); *id.* ¶ 17 (admitting C. Joy entered into the Note attached as Exhibit I to the Amended Complaint); *id.* ¶ 21 (admitting C. Joy entered into the mortgage attached as Exhibit J to the Amended Complaint).) And the Defendants have admitted to non-payment of both Notes beginning in August 2019. (*See* Ex. C to Pl. Nov. 1, 2021 Cert. (Dkt. 46-5) ¶ 43, ECF at 68; Ex. D to Pl. Nov. 1, 2021 Cert. ¶ 43, ECF at 73; Ex. E to Pl. Nov. 1, 2021 Cert. ¶ 21, ECF at 77; Ex. F to Pl. Nov. 1, 2021 Cert. ¶ 21, ECF at 81; Ex. G. to Pl. Nov. 1, 2021 Cert. ¶ 22, ECF at 85; Ex. H to Pl. Nov. 1, 2021 Cert. ¶ 22, ECF at 89.)

Nissan therefore has established its prima facie entitlement to foreclosure at summary judgment. *See Washington Mut. Bank v. Schenk*, 112 A.D.3d 615, 616 (N.Y. 2d Dep't 2013).

### B. Defendants' Affirmative Defenses

Once a plaintiff establishes its prima facie case for foreclosure, "it [i]s incumbent on the defendant to establish by admissible evidence the existence of a triable issue of fact as to a defense" to foreclosure. *Washington Mut. Bank v. Valencia*, 939 N.Y.S.2d 73, 74 (2d Dep't 2012). The Answer raises a variety of affirmative defenses, each addressed in Nissan's motion,[2] but in their opposition to the motion, the Defendants decline to assert any of the

---

[2] In addition to addressing the affirmative defenses individually, Nissan asserts that the unconditional language of the Guaranties and the cross-guaranty in the Cross-Agreement precludes Defendants from asserting affirmative defenses against foreclosure. (*See* Pl. Memo. in Support of Mot.

defenses they previously raised. (*See generally* Defs. Opp. Sum. J. (Dkt. 46-7) ("Opp.").) Accordingly, for the purposes of this motion, the Defendants have waived the remaining defenses. *Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally . . . a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.").

Even if asserting the affirmative defenses in the Answer were sufficient to put them at issue on this motion, none preclude a grant of Nissan's motion. Each of the nineteen affirmative defenses asserted in the Answer consists of a single conclusory sentence stating the affirmative defense without support. (*See, e.g.*, Answer ¶ 163 ("Waiver and/or estoppel."); *id.* ¶ 167 ("[Nissan] has failed to mitigate damages.").) For many of these, the court cannot examine the defenses' applicability to the foreclosure count without some showing or theory from the Defendants. (*See, e.g.*,

---

(Dkt 46-2) at 9-11.) The cases on which Nissan relies support the proposition that specific unconditional language prevents a guarantor from asserting certain affirmative defenses against enforcement of the guaranty, but are unrelated to the assertion of affirmative defenses by the underlying loan's borrowers against collection or foreclosure on the underlying loan. *See, e.g.*, *136 Field Point Circle Holding Co. v. Invar Int'l Holding, Inc.*, 644 F. App'x 10, 12 (2d Cir. 2016) (summary order) (stating that an unconditional guaranty precludes the *guarantor* from asserting a defense); *CrossLand Fed. Sav. Bank by F.D.I.C. v. A. Suna & Co.*, 935 F. Supp. 184, 193 (same); *In re Futterman*, 602 B.R. 465, 478 (S.D.N.Y. Bankr. 2019) (stating that a guaranty's unconditional or irrevocable waivers of claims or defenses are enforceable "in actions *to enforce a guaranty*") (emphasis added). But Nissan has not moved for summary judgment on its fifth count, for breach of the Guaranties and the cross-guaranty included in the Cross-Agreement's terms. (*See* Complaint at 34-36.) Nissan has only moved for partial summary judgment on the fourth count, for foreclosure, and this opinion therefore does not address the evidence of default under the Guaranties or Cross-Agreement, and expresses no conclusion on those claims. The language in the Guaranties and of the cross-guaranty in the Cross-Agreement is therefore irrelevant to any defenses to foreclosure on the Notes and mortgages.

*id.* ¶ 165 (asserting that Nissan "does not have clean hands" without explanation); *id.* ¶ 166 (alleging "[l]ack of consideration" without any allegation the funds loaned under the Notes were never provided).) Others are irrelevant to a claim of foreclosure, as discussed *infra*. (*See, e.g., id.* ¶ 168 ("[Nissan] has failed to mitigate damages."); *id.* ¶ 169 ("The amounts alleged to be due from Defendants, if any, under the subject agreements are incorrect."). Accordingly, the court will consider these affirmative defenses abandoned.

Turning to the remaining affirmative defenses, the court holds that none create a genuine issue of material fact.

- As discussed above, Nissan has stated (and proven with uncontroverted evidence) a claim for foreclosure. (*See* Answer ¶ 161 (alleging failure to state a claim).)
- The Notes and mortgages are supported by consideration because "[t]he extension of credit . . . may itself be said to constitute consideration for the giving of the mortgage." *1855 E. Tremont Corp. v. Collado Holdings LLC*, 961 N.Y.S.2d 25, 27 (1st Dep't 2013). (*See* Answer ¶ 164 ("Lack of consideration.").) Nothing in the record indicates that the credit provided under the Notes was not actually extended.
- Claims for foreclosure accrue at the due date for the unpaid installment or the time at which the mortgagee is entitled to demand full payment. *Zinker v. Makler*, 748 N.Y.S.2d 780, 782 (2d Dep't 2002). The statute of limitations on such claims is six years. *Citimortgage, Inc. v. Dalal*, 134 N.Y.S.3d 21, 22 (1st Dep't 2020) ("An action to foreclose on a mortgage is subject to a six-year statute of limitations."). The earliest contract at issue in this case was entered into in 2018, so New York's six-year statute of limitations on a claim of foreclosure could not have

8

> run prior to the filing of the case on June 3, 2019. (*See* Answer ¶ 171 ("Statute of limitations.").)
> - Laches is unavailable as a defense to foreclosure where the action was brought within the statute of limitations. *N.Y. State Mtge. Loan Enforcement & Admin. Corp. v. N. Town Phase II Houses*, 594 N.Y.S.2d 183, 183 (1st Dep't 1993). (*See* Answer ¶ 164 ("Laches.").)
> - Nissan, as the original issuer and holder, as of the initiation of this lawsuit, of the Notes and mortgages, has standing to pursue foreclosure. *Peak Fin. Partners, Inc.*, 119 A.D.3d at 539. (*See* Answer ¶ 177.)

### C. Defendants' Arguments that Summary Judgment is Improper

Finally, the Defendants assert three additional arguments for why summary judgment is inappropriate. (*See generally* Opp.) *First*, they argue that Nissan's motion was procedurally improper because it was filed during the pendency of the Act, which stayed certain ongoing commercial foreclosure proceedings upon the delivery of a hardship declaration by the borrowers. *Second*, they argue that the court should await the completion of discovery before considering the motion, because the Defendants dispute the commercial reasonableness of Nissan's disposal of collateral under the WFSA, and discovery related to that issue remains ongoing. And *third*, Defendants argue that Nissan's evidentiary basis for default—Defendants' admissions of nonpayment under the Notes—was not the theory pleaded in the Amended Complaint, and therefore cannot serve as the factual basis for summary judgment. Each of these arguments fail, and as a result, the court considers partial summary judgment appropriate at this time.

1. The Act's Stay of Foreclosure Proceedings

Defendants argue that the court should not consider Nissan's motion for partial summary judgment because it was filed during

9

the pendency of the Act, which should have stayed this action. The relevant sections of the Act, which applied to commercial mortgage foreclosures, went into effect on March 9, 2021. *See* Act pt. B, subpt. A § 11. The law provided that, in any pending foreclosure action, a small-business mortgagor satisfying certain criteria could provide a hardship declaration to the mortgagee or the court. *Id.* § 7. The form of hardship declaration set out by the law required that the mortgagor attest that its business had lost revenue or increased expenses due to the COVID-19 pandemic. *Id.* § 2. Such provision would give rise to a rebuttable presumption of financial hardship and, if not rebutted, the pending foreclosure action must be stayed until the expiry of the relevant provisions; after that date, the foreclosure proceedings could continue, and any applicable fees, penalties, or interest for nonpayment still could be assessed by the mortgagee for the period during which the action was stayed. *Id.* §§ 2, 8. These provisions of the Act were originally in effect until May 1, 2021, but the legislature amended the law twice to extend the expiry date until January 15, 2022. *Id.* § 11.

After Nissan requested a pre-motion conference regarding the instant motion, the Carol Joy Parties served a hardship declaration on Nissan pursuant to the Act on July 7, 2021. (*See* Dkt. 40, 41.) Based on this declaration, the Defendants requested that the court deny Nissan's application to file the instant motion, but at no point did the Defendants move for a stay of this action pursuant to the Act. In response, Nissan contested the validity of the hardship declaration and the Carol Joy Parties' eligibility for relief under the Act. (*See* Dkt. 42; *see also generally* Pl. Reply in Support of Sum. J. (Dkt 46-12) at 3-5.)

"The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). Where a party

requests a stay pending some ongoing issue and the issue is resolved, the request for a stay is moot. *See, e.g., Elite Licensing, Inc. v. Thomas Plastics, Inc.*, No. 02-cv-4847, 2003 WL 473669, at *2 n.3 (S.D.N.Y. Feb. 21, 2003) (denying stay pending related action and transfer to venue of pending actions as moot because the actions were already being consolidated).

The relevant provisions of the Act expired in January. The relief provided by that law was limited solely to a stay which, by the law's explicit terms, would only last during the effective duration of those provisions. The law placed no restrictions on fees or penalties assessed during the pendency of any stay, and—assuming the Carol Joy Parties were eligible under the law while it remained in effect—would have provided them with no relief other than a stay for the Act's duration. After the expiry of the provisions providing for a stay, the law took no further effect. Since New York allowed the relevant provisions of the Act to expire on January 15, 2022, that law creates no barrier to this court's consideration of Nissan's instant motion for summary judgment today.

### 2. Disputes Regarding the Amounts Due Under the Various Agreements

Next, the Defendants argue that summary judgment on Nissan's foreclosure claim is inappropriate while discovery remains ongoing. Specifically, the Defendants point to their asserted defense regarding "the amount due to [Nissan] on its foreclosure claim" and their challenge that Nissan "did not dispose of the [WFSA] collateral . . . in a commercially reasonable manner." (Opp. at 4.) The Defendants add that any calculation of amounts owed after foreclosure is "inextricably intertwined" with the amounts allegedly owed to Nissan under the other credit agreements at issue in this case. (*Id.*) According to the Defendants, summary judgment on Nissan's foreclosure claim is therefore premature until

11

discovery into damages and amounts owed can be completed and any remaining outstanding issues can be resolved. (*Id.* at 5.)

There may be a genuinely disputed issue of fact related to Nissan's treatment of collateral, and such a dispute could impact any calculation of amounts owed pursuant to the Notes and the other agreements between Nissan and the Defendants. But these issues are irrelevant to whether Nissan is entitled to an order of foreclosure and sale on the Notes and mortgages. "A dispute as to the exact amount owed by the mortgagor to the mortgagee . . . does not preclude the issuance of summary judgment directing the sale of the mortgaged property." *Crest/Good Mfg. Co. v. Baumann*, 554 N.Y.S.2d 264, 265 (2d Dep't 1990); *1855 E. Tremont Corp*, 961 N.Y.S.2d at 27 ("Nor is summary judgment precluded by discrepancies in the amounts of money claimed by plaintiff to be outstanding."); *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 199 (S.D.N.Y. 2018) ("[F]ailure to mitigate damages is not an affirmative defense to a foreclosure action; rather a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale."). Defenses regarding the amounts owed, "[a]t best, . . . challenge only the amount of the mortgage debt, as [the Defendants'] claims, if proved, might be offset against the amount due and owing to the plaintiff." *Johnson v. Gaughan*, 513 N.Y.S.2d 244, 245 (2d Dep't 1987). And contrary to the Defendants' claims, a referee is fully able to account for offsets and additional amounts in calculating the amounts owed to either party after sale; in fact, New York state courts consider this the "proper procedure." *1855 E. Tremont Corp.*, 961 N.Y.S.2d at 27.

Disputes regarding the amount due are therefore not a sufficient legal basis for denying summary judgment on foreclosure. Nonetheless, the Defendants raise fair concerns that, due to the intertwined nature of the various agreements at issue in this litigation, discovery relating to the disposal of collateral under the

12

WFSA is related to the amounts owed under the Notes. Such issues should only be resolved with the benefit of full discovery. Accordingly, while Nissan's request for an order of foreclosure and sale is proper at this time, any calculations of amounts owed under the Notes and the other agreements will be addressed at a later stage, allowing Defendants an opportunity to raise any issues relating to such calculations after completion of the foreclosure and sale and the end of discovery.

### 3. The Complaint's Pleading of Default Under the Notes and Related Mortgages

Finally, the Defendants assert that their non-payment of amounts owed under the Notes was not alleged in the Amended Complaint, and therefore summary judgment may not be granted on that basis. (*See* Opp. at 6-7.) The Amended Complaint alleged that the Carol Joy Parties defaulted under the Notes and sought foreclosure in light of those defaults. (Compl. ¶ 130). The Amended Complaint does not, however, premise the defaults on the Defendants' non-payment beginning in August 2018;[3] instead, Nissan alleged that Nemet defaulted under the WFSA by failing to remit proceeds from the sale of cars to which Nissan retained title pursuant to the WFSA, (*see id.* ¶ 45), which default in turn constituted a default for all Defendants under all their various financing agreements with Nissan—including the Notes—pursuant to the Cross-Agreement. (*See id.* ¶¶ 89, 130.) The non-payment occurred later: in its letter contesting the validity of Defendants' COVID-19 hardship declaration, Nissan asserted that in July 2019, the parties entered into a Voluntary Surrender Agreement to return Nissan's vehicle collateral, and Nemet ceased operating. (Dkt. 42 at 3.) The Carol Joy Parties'

---

[3] These defaults occurred after this case was initiated, but before filing of the Amended Complaint in September 2019.

13

non-payment under the notes began a month later, in August 2019. (*See* Pl. Memo. in Support of Mot. (Dkt 46-2) at 1.)

Although not framed as such, Defendants' argument amounts to an objection pursuant to Federal Rule of Civil Procedure 15(b), under which the court "may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice[.]" *Hubbard v. Port Auth. of N.Y. & N.J.*, No. 05-CV-4396 (PAC), 2008 WL 464694, at *7 (S.D.N.Y. Feb. 20, 2008). Rule 15(b), like other Federal Rules of Civil Procedure, reflects the federal system's general rejection of the "theory of the pleadings," C. Wright & A. Miller, Federal Practice & Procedure § 1219, under which a party may only recover on the theory of relief alleged in the pleadings. *See also Newman v. Silver*, 713 F.2d 14, 15 n.1 (2d Cir. 1983) ("[T]he nature of federal pleading . . . is by statement of claim, not by legal theories."). In other words, initial pleadings need not lay out the ultimately victorious theory of liability, so long as they state a claim upon which relief can be granted and provide the other party with sufficient notice to maintain a defense.

Accordingly, "[a] motion to amend the pleadings to conform to the evidence . . . may be made at any time, even after judgment, and mutual consent of the parties is not necessary by the clear language of the rule." *Regent Ins. Co. v. Storm King Contr., Inc.*, No. 06-CV-2879 (LBS), 2008 WL 563465, at *13-14 (S.D.N.Y. Feb. 27, 2008), *adhered to on reconsideration*, 2008 WL 1985763 (S.D.N.Y. May 7, 2008). Such an amendment should be allowed where "the claims arise out of the scheme that was the focus of the pleadings, the claims are directly related to the earlier violation, and there was no undue prejudice to the defendants." *Jund v. Town of Hempstead*, 941 F.2d 1271, 1287 (2d Cir. 1991).

The requisite prejudice may arise where a party "reasonably conduct[ed] discovery on one theory of liability, . . . then [had] to defend against a different theory." *Pope v. Cnty. of Albany*, No.

14

11-CV-0736 (LEK) (CFH), 2014 WL 316703, at *10 (N.D.N.Y. Jan. 28, 2014); *see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 274 (S.D.N.Y. 2012) ("The addition of certain legal theories does not establish prejudice where, as here, there will be no impact on discovery or BoA's ability to maintain a defense."); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense."). However, "a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case." *N.Y. State Elec. & Gas Corp. v. Sec. of Labor*, 88 F.3d 98, 104 (2d Cir. 1996).

Nissan's theory of default under the Notes "arise[s] out of the scheme that was the focus of the pleadings." *Jund*, 941 F.2d at 1287. On this motion, Nissan asserts a breach of the Notes due to non-payment of amounts owed under the Notes; in the Amended Complaint, Nissan alleged a breach of the Notes due to non-payment of amounts owed under the WFSA. The legal claim remains the same in either event, and Nissan merely asserts a new theory of breach.

Further, the Defendants have provided no reason to believe the change in the theory of their default on the Notes caused any prejudice. In response to requests for admission from Nissan, the Defendants admitted to non-payment of the amounts owed under the Notes beginning in August 2019. (*See* Ex. C to Pl. Nov. 1, 2021 Cert. ¶ 43, at ECF p. 68; Ex. D to Pl. Nov. 1, 2021 Cert. ¶ 43, at ECF p. 73; Ex. E to Pl. Nov. 1, 2021 Cert. ¶ 21, at ECF p. 77; Ex. F to Pl. Nov. 1, 2021 Cert. ¶ 21, at ECF p. 81; Ex. G. to Pl. Nov. 1, 2021 Cert. ¶ 22, at ECF p. 85; Ex. H to Pl. Nov. 1, 2021 Cert. ¶ 22, at ECF p. 89.) They make no argument that such non-

15

payment does not constitute an event of default under the Notes. And they present no possible dispute of fact regarding or legal defense to their default which, with further opportunity to conduct discovery, could compel another conclusion. Absent any unknown or contested facts which would call into question the Defendants' default due to non-payment of amounts owed under the Notes, Defendants cannot show prejudice from the court's consideration of Nissan's alternate theory.

Nor were the Defendants' prejudiced by the timing of Nissan's change in theory. Their first exposure to the assertion that default on the Notes could be premised on non-payment as opposed to violation of the WFSA occurred as early as September 25, 2020, when Nissan served requests for admission on the Carol Joy Parties and Perlstein, each of which asked for (and eventually received) admissions that the Carol Joy Parties had failed to pay amounts due under the Notes. The issue was again raised on August 9, 2021, when Nissan asserted that a motion for partial summary judgment on the issue of foreclosure was timely considering Defendants' admission of default. (*See* Pl.'s Aug. 9, 2021 Letter in Support of Request for Pre-Motion Conference (Dkt. 42 at 3).) On both dates, discovery was ongoing, allowing Defendants ample opportunity to pursue any discovery avenues that could put the Carol Joy Parties' defaults in issue. At least, Defendants had enough time to develop a discovery strategy for information needed to dispute these defaults, which they could have presented to the court as a reason for delaying the instant motion. Having failed to do so, Defendants cannot claim they were prejudiced by Nissan's failure to plead non-payment of the Notes in the Amended Complaint. *See N.Y. State Elec. & Gas Corp.*, 88 F.3d at 104 (rejecting claim of prejudice from assertion of new theory in motion papers because issue was "hotly disputed throughout" discovery, putting party on notice); *Hubbard*, 2008 WL 464694, at *7 (rejecting claim of prejudice where communications between the parties during discovery provided

notice of additional facts supporting claim asserted in complaint).

### IV. CONCLUSION

For the foregoing reasons, Nissan's motion for partial summary judgment on the Fourth Count, for foreclosure, is GRANTED. Nissan is DIRECTED to submit a proposed form of judgment of foreclosure and sale, allowing for a final calculation of amounts owed after completion of discovery and resolution of the remaining claims at issue in this case, within 14 days of the entry of this order.

SO ORDERED.

Dated:   Brooklyn, New York
         September 27, 2022

                                    /s/ Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge